Good morning, and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I am one of the judges on the circuit court. I am delighted to be here. My chambers, I should say, are in Anchorage, Alaska, but sitting this week in Pasadena with two of my colleagues, Judge Fletcher on my right, whose chambers are in San Francisco, and Judge Van Dyke on my left, probably your right, I guess, whose chambers are in Reno, Nevada. We have a little housekeeping to do for the record. I just need to note that we've submitted on the briefs case number 23-55192, Millam v. Energizer Brands, and case number 23-55541, Farber v. City of Los Angeles. The first case on the oral argument calendar is Fong v. U.S. Bancorp, case number 23-16186. Counsel, we're ready for your argument whenever you're ready to present it. Good morning, and may it please the Court. My name is Toji Calabro. I represent the plaintiffs and appellants, and I'd like to reserve five minutes of my time for rebuttal. Sure. Just keep an eye on the clock, please. We're here on an order in judgment compelling arbitration. Under controlling law, the authority provides that defendants have the burden of proving that plaintiffs clearly and unequivocally agreed to arbitration. The Federal Arbitration Act provides that when there's any dispute as to whether a contract for arbitration has been formed, that a jury trial is required. Here, the only document my client signed is a one-pager. It's in the record, and nowhere does it reference or say arbitration at all. That's undisputed. Defendants are trying to bind them to a completely separate document, but there's no direct evidence that they ever saw this document. Could I interrupt you there, because you're picking up at the story one chapter later than I'm interested in. I think that the record tells us that they've had a safety deposit box at this institution since the year 2000? Correct. Okay. So there was presumably a written agreement as well for that? There is nothing in the record to indicate that. Hence my question. Presumably, yes. Hence my question, but I'm assuming there was an agreement. Am I correct? They had a safety deposit box from 2000 to 2013 at the same bank? That is correct. Okay. Then they got a phone call? Correct. About a problem with a key? Well, yes. Well, they were, yes. They were regularly putting items into the box. One of their trips to the box, there was a problem with the guard key. There's two separate keys, one that you keep and one that the bank keeps. So they were having a problem with, the bank was having a problem with the guard key. So after that visit, they then called them to come back and just move it to a different location. So you say they called them. The bank called your clients? Yes. The bank called my clients. To come in, to move the... The box. ...contents. Right. So they were present to witness that? Correct. All right. And that's when they signed the one pager you're talking about? Right. So the way my clients describe it is that they have a box, it's in a slot. And so they would, they split their box out, out of one place and split it back into another one. And because they were getting new keys, they understood that they were signing the signature card for the new keys. I'm going to get out of your way in just a second. I'll let you proceed. But I have one more question about this earlier period of time. My understanding is that the other, another thing that happened during the first, I guess it would be 13 years, is that the bank at some point recognized that they had the original box registered in the bank system under a different number, an incorrect number. The bank, the responsive brief tells me that. Yes. That's what the very, that's what the responsive brief says. So I'm not going to spend a lot of time on this, but is there any explanation for that? Did that go on for 13 years? Well, remember, Your Honor, we've had no discovery. So I don't, we don't know. All right. I'll leave it at that then. Thank you. So as I was saying, the only thing that the defendants point to that my clients actually signed was the signature card and nowhere is there any evidence or any reference to arbitration in that. There's no evidence that they ever saw any separate document that they're trying to now bind my clients to, and there's no evidence that they ever knew it was in existence. This does not meet the standard of clear and unequivocal consent to dispute. Let me ask you a question about the wording on the document they did sign. Sure. It says that they, quote, acknowledge receipt of two keys, I think that's unquestioned, a copy of the present rules, now rules is bank speak for the big document that contains within it the specific specifications as to safe deposit box and the arbitration clause and da, da, da. So when Ms. Anderson is present there, she knows that they're signing something that is acknowledging a copy of the rules. She does not remember the actual transaction. She describes her ordinary procedures. And her ordinary procedures, she says, first off, her first one, she says, my ordinary procedures when they're opening a box, opening an account, X. Later, I guess she's told, well, wait a minute, no, they were just coming in to get a different box. She says, oh, I would have followed the same procedures. That's what she says in her second one. But she doesn't remember it. Both of the Fong brothers very specifically state they never received anything. At this point, I think I have to, at this stage in the proceeding, I think I have to believe the Fongs. If I believe the Fongs, that means that Ms. Anderson saw them sign this. It says we acknowledge receipt of the rules. And she knew they were not getting the rules. What am I supposed to do with that? Well, you're supposed to say that there's no area of the law in which plaintiffs know that someone has the right to rely on a statement of historical fact that they know to be false. So that would be this case. There's no way that they can rely on this idea that we are bound by this idea that we've received these documents. It goes to trial. And in fact, Your Honor, I think it was the Riley case where it was sort of similar. In the Riley case, it was a case that the defendants cite. It was an unpublished Ninth Circuit case from a while ago. So I'm not sure that we're supposed to. What do we do with the, you know, Judge Fletcher's saying that if we take all the facts in your favor, that Anderson signed something that says, when I read it, it says that the renter acknowledges receipt of a copy of the rules. So your two clients, your clients both signed this, correct? They signed this, yes. So they signed that they had received a copy of the rules, but they're saying they lied when they signed it? Well, remember that under Yaumans, it's not clear to the Fong's that the rules, this defined term rules, meant anything other than this. I understand. So that's a separate argument. You know, I think there's two arguments. One of your arguments is that when you read this, the rules could be this. And that's a separate argument. And we can talk about that in a second. But the other argument is that it was clear to everybody, including Anderson, that the rules meant something else, but that Anderson was lying. But your clients were lying, right? No. Because your clients are saying they received it. I'm saying if we assume that they knew that there were separate rules, and they signed that they had received them, then your clients would be lying. Right. Your Honor, our position is that when they signed this, when they said rules, they meant the document that they were signing. So let's talk about that for a second, because it says, the rules are incorporated herein by reference and made a part of this agreement. And I understand your argument, I've read, but are you aware of any circumstance where you incorporate something as part of an agreement, that when you're actually just incorporating the agreement itself, it seems to me it's pretty clear that that's referencing something else that's being incorporated in to the agreement. What is your argument, because I don't quite understand it, as to why that wouldn't be clear to anybody reading it, that the rules have to be something else that is being incorporated in and being made part of this agreement? As a preface, to avoid backtracking, when you answer Judge Van Dyck's question, I think the record shows that one of these gentlemen is illiterate. Correct. Okay. But as to the other individual, can you tell me which brother are we talking about? The other individual? Peter Fong. Peter Fong can speak English and can read English. Sue Fong, his brother, cannot. Okay. So understanding when you answer Judge Van Dyck's question, I should be thinking that Peter could read this document, is that right? I believe that's right. Okay. Go right ahead. Okay. So remember that rules is a defined term, and it's defined to mean the safe deposit lease agreement, right? Now if you look at the very top of this document, it's called the consumer safe deposit box contract. Safe deposit box contract and safe deposit box lease agreement mean the same thing, especially when you look at the first line. The undersigned renters hereby rent, hereby rent, the safe deposit box described in this So as far as the Fongs knew, all they were signing was this document, especially because they weren't getting anything else. So I understand your argument that you're saying, well, these are kind of similar type terms, and so somebody could think that they were the same thing. But what would, if somebody was thinking that and they were reading this, which isn't a very, it's just like four or five sentences here, it says the rules are incorporated herein by reference. Why would that not tell somebody that this must be referring, the safe deposit box lease agreement, which is the rules. Why is that not clearly referring to something else? Because you don't incorporate, I've never heard of something incorporating itself. Well, right. But the Fongs aren't required to go through this level of legal analysis, right? The question is, is this unambiguous? And unambiguous means, is there more than one reasonable interpretation? So hence, my question about it, I think we take it as a given that these folks had, these same two brothers, had an existing agreement until the bank called them and said, we have to move your box. There's a problem with the key, I'm paraphrasing, of course. So my first thought was that they would think the original agreement was being incorporated, but I don't have that in the record unless you're going to tell me I missed it. That's what I was looking for. It is not in the record, Your Honor. Okay. Thank you. You started to answer Judge Fletcher's question, but I don't think you got a chance to, and I'm not sure you even remember it anymore. But I want to make sure that I get an answer to Judge Fletcher's question before we finish. I can't remember my question, but maybe you can. Well, even if everything that we've talked about is true, even if we grant all of that, even if incorporation by reference necessarily has to mean something else which we don't concede, there's still two other prongs of this analysis that still has to be met by the judge. First, they have to have consented to it, and under California law, that's been undisputed. Because the font size was so small, it's not binding as a matter of law. Well, I don't know. So you make that argument, forgive me for interrupting, about the 5.5. What font size is this document? This is under 8, right? We put in the record that we did an analysis where we copied it. The law talks about, I think, 5 or 5.5 point font. So when you make this argument, you're running out of time. So just quickly, what is the basis for this argument? Yeah, the Link case, conservatorship of Link says that typeface should be no smaller than 8, and we show that this is at least smaller than 7.5. The Otto case that you're remembering was a case that was talking about a 5.5 case. Okay, again, I don't want to take up a ton of your time, but I couldn't figure out, you've made this argument, what I couldn't figure out is some place where it looks awfully tiny to me, but these days everything looks tiny to me, that's another problem, birthday related. So where do I find in this record, when you come back, you can tell me, where I can find the actual font of this document? Sure. You were going on to try to make another argument. Well, I was going to move on. Not only do we have to prove that the font size was there, but we also have to prove as a factual matter that it was easily available to my clients. All of those have to be met for there to be a clear and unequivocal incorporation by reference under the California Court of Appeal cases, assuming those are correct. We also have the waiver argument and the equitable estoppel arguments that I'm happy to rest on for now. What's the burden regarding the availability of the separate document being readily available? So there are three prongs of the California Court of Appeals case to say you have to meet all three of them. The third one is that it is easily available. I just asked you a different question. Oh, I'm sorry. That's all right, maybe I wasn't very clear. Who has the burden to prove all of those things? The defendants. Thank you. Do you want to save the rest of your time? I do. Did you get your questions answered? Okay. I think we're all set. All right. Thank you. When you come back, you'll have a few minutes left. Good morning. May it please the Court. Karen Baumholt for the respondents. And Judge Fletcher, I do remember your question, and I'd like to start with it, if that's all  Remind me of my question, will you? Yes, please. Sure. Your question related to whether or not we have a separate document. We have to assume that the FONGs didn't receive the rules, the deposit account agreement. In the current posture of this case? In the current posture of this case, I assume they didn't receive it. Okay. Okay? I assume they didn't receive it. But that's not the question for this Court, as the Court just addressed in the last moments. The question is, what did, as Judge Van Dyke said, what did the document that they signed say, and did it incorporate? I'll get to that in a second. But I think there's an important point that, as I understand Judge Fletcher will be making, which is, it's a little bit of a subtle point about, given what was signed here, and the language and what was signed, if we assume that they didn't receive it, which I think we're all assuming that they didn't receive it, then I think, as I understand it, he's saying that the bank employee signed something and had them sign something that said that they had received it, and so that the bank employee sort of is impeaching herself just by doing that. Do you see what I'm saying? I understand that. And what I'm trying to figure out is, well, yeah, I suppose, you know, she's signing something that says they got a copy of the rules, and they, you know, I guess we're assuming they didn't get it. Then she signed, but they also signed something that said that they got a copy of the rules. So, I'm trying to figure out what to do with all that. So, what you do, first of all, let me say this, I don't think the bank employee impeaches herself at all. I don't think it's at all true that they didn't receive it, but that's not the question at this point of the proceeding. I'm not accusing her of impeaching herself at all, because she can't remember the transaction. She just describes her ordinary procedure. Exactly. But, that's why these cases, Walschlager, Marcellian, Butteroff, Koffler, a legion of California and federal cases say we look to this objectively, we look to the document that they signed, and you are bound by documents that you sign, whether you read them or not, whether you got the incorporated documents or not, you're bound when you sign it. Judge Christin, you asked, should we be thinking that one of the brothers could not read this and one couldn't. The answer to that is no, you should be thinking both could read it because both signed the document. No, that's nonsense. We know that people who are functionally illiterate can sign their name, and you look at the signature, it is the signature of someone who is not ordinarily accustomed to writing. But Your Honor, there's nothing in the record to suggest that our clients didn't. There are California cases where this comes up and arguments are made. The argument was not made here that someone couldn't read and understand what they signed. In fact, both, both brothers admit in their declarations that they did receive and sign this document, which is a contract. So let me move to that point. Julie, counsel, if you could back up a minute. Sure. Because you're spending a lot of time on this, and I think the district court went through this analysis and then recognized there was a dispute of fact about receipt of this other document, whatever the other document is, and he assumed, he recognized that he needed under the posture of this case to assume that they didn't receive it. Correct. And then he ruled in the alternative, right? I hope I'm using the right gender. I'm not sure I remember which district court judge we're talking about, but ruled in the alternative and said that this other document was readily available. Opposing counsel tells me that he thinks that's your burden. Do you agree? I agree. Okay. The question... Can you speak to that point? Sure. Absolutely, Your Honor. The question is not... So again, the question... If there's a dispute of... Counsel, just tell me what the question is, and I just gave you a question. Could you answer that one? How do you meet that burden, please? Sure. We meet the burden by Ms. Anderson's declaration, laying out her ordinary procedures and saying, if... I normally print all these things. So the answer to that question is, if they had asked, and there's no evidence, and of course, they would say they didn't ask because they would say, I didn't know I was supposed to ask. They did not ask for these documents, and if they had, she would have handed it to them. That's the evidence. There's zero evidence to the contrary. We have met that burden. The preponderance of the evidence here is, if they had asked for the rules... But that's not what the statement says. They signed a statement that says, I'm paraphrasing, I have received. But that doesn't say, I could get it if I wanted to and I didn't ask. It just says, I have received. That's not true. She knows it's not true. She knows the form. They may or may not have read this carefully. They may not, even if they read it carefully, they might not have understood it. I think it's plausible to think that if they'd read it carefully, they would have thought that this is the agreement, these are the rules. Okay. So let me answer that two ways. Sure. Let me take the last part. The last part is, is it plausible to think that someone might think that? Possibly. Do their declarations say, I've now read this and that's how I read it? No. They do not say in their declarations, when I signed this signature card, I believed that the words, safe deposit lease agreement, meant the document I was signing. They do not say that. Sure. But they had a safety deposit lease agreement. They had, that's what's hanging me up. Okay. If I assume there was, I think the district court's right, he has to assume that they got this, sorry, that she didn't hand it to him that day. Her initial declaration said, when I open an account, here's how I do it. Then she realized that was a mistake because they weren't opening an account. As far as I know, they didn't have an account. Right? What they had was an existing safety deposit box that presumably had an agreement. So it seems to me the reasonable expectation would be the understanding on their part of, I've got that. I've got this agreement. Because they had it for 13 years. But Your Honor. Go ahead. Go ahead. No, no, I'm so sorry. I didn't mean to interrupt your question. The reason they would be prompted to ask for anything. The reason they'd be prompted to ask for anything is for exactly the reason Judge Van Dyke was articulating earlier. When we look at ER 199, consumer safe deposit box contract, that document is clearly a new contract. They are signing it. They are agreeing to be bound by it. And the terms say, as Judge Van Dyke read earlier, that the rules are incorporated here in by reference and made a part of this agreement. When you say it's a new agreement and it's clear, counsel, it's not clear to me. So if you could help me out with that. My understanding is the backdrop of this is that the bank, what was the bank doing? You're saying the key doesn't work anymore. As opposed to, you know, if you fast forward, there was this episode where the bank had drilled into their box, several apparently. Right? I can explain that background for Your Honor if it would be helpful. I mean, it might be helpful because it's just so peculiar about how the bank is reading these. You know, the first line of your brief, I think that's your first line, says that this is about a closing of a box, which is, of course, on the back end where the bank drilled these. And I can't figure out how you're treating these agreements. Okay. It seems to me very reasonable, and then I'm going to get away and let you answer it, for them to understand they had an ongoing contract. They've had it for several years. They signed a new contract, Your Honor. Tell me why that looks to them. How do they know that's new? Because it says contract on the top of it. Consumer safe deposit box contract. They signed the document. You were presumed under Walschlager, under... Maybe I could ask it this way. Did they get anything in the record that I've missed? Did they get anything to say that the old contract is kaput? Well, sure. We're starting over? I mean, the document that they signed says that the rules are amended from time to time. That's very standard practice in this industry, in the banking industry, to have those rules be amended from time to time. When you sign a document, look, the case law is very, very clear. Walschlager, Marcellin, all the cases cited in Bodorov, they all say the same thing. When you sign a document that looks like a contract, and it walks like a contract, then you're bound by what's in it. They wouldn't disagree that they're bound by... I appreciate that point. I'm just not sure we're communicating, and I want to give you the opportunity to answer what's hanging me up. Sure. Thank you. I'm not trying to ruin your day. No, thank you. Quite the contrary. I'm trying to make sure I don't miss anything. Can I ask one follow-up to that? Not quite yet. Please. Thank you. So, this wasn't a new account. It wasn't the new box. They've been doing this, and as you said, this document that they've signed is a contract. You're saying it's a new contract, but it says it could be amended from time to time. What's your best answer about why I shouldn't read this piece of paper that they signed as a continuation, that it refers back to the original ongoing agreement? Because of the words on the piece of paper that they signed, Your Honor, combined with all of this case law that we've cited, consumer safe deposit box contract is clearly a contract. Yes, it is. You keep making that point. How do we know it's a new one, a different one, that the old one stopped? Well, it didn't necessarily, but that's not really the point, right? The point is, right, we're trying to figure out what is being incorporated. And the document, it changes, right? It changes the terms. At one point, it has to, a different place has to tell you that rules or the lease agreement means rules. It doesn't, they don't quite match up. So, I'm trying to figure out what these folks would have reasonably understood was getting incorporated. Sure. They agreed, renters agreed to the terms of the quote, capital, safe capital deposit, capital box, capital lease, capital agreement, close quote, as amended from time to time, parentheses, the rules, including payment of fees, et cetera. Rental fees, I'm sorry. The rules are incorporated herein by reference and made part of this agreement. Whether or not it's a continuation of a prior 2000 contract that they did not put in the record, whether it's a continuation of that or not, this document clearly says you are incorporated documents. Right. I think that's exactly it. And maybe we're just going to talk past each other all morning and I'm going to let Judge Van Dyke ask the question. I'm so sorry. Not at all. You don't owe me an apology. I'm just not sure how else to ask it. I don't know what the first contract from 2000 said about rules. And so, I don't know what they would have thought is getting incorporated. That is my point and you had a different question. It's related. Just may I try to tie that up though? Nothing in their declarations, the Fong's declarations, tells you that they were relying on some prior version of the rules. Nothing. But that's my question. I'm kind of confused by this whole conversation because I didn't understand that they were – my understanding was that their argument at least now, I'm not sure their declarations say this, but their argument now is wholly that we thought that what it was referring to as the rules was this thing itself. I don't – there's nothing in the record about that, about the prior agreement. I think we kind of are all assuming that there was some written agreement because that's just how banks work. But I don't understand them or you or anybody to be thinking that this was even a possibility that this referred to a prior agreement. I understand, I guess, in the abstract how that could be, but is that an argument that's being made by anybody in this case? It has not been made by anybody. What they have said was we thought we were signing a new signature card. That's what they've said. We thought we were signing a new signature card. But the document they signed does not say signature card. It says we're bound by these rules. And whether or not – Let me ask you this. California law, there are three requirements. One is that the reference must be cleared unequivocal. Second, the reference must be called to the attention of the other party. How was it called to the attention of the farms? So the cases, Your Honor, don't actually require that you – Just tell me how it was called to their attention. Because it's written there. It doesn't have to be – So nothing beyond the fact that it was written? Correct. And is the context irrelevant? That is to say, they're not opening up a new box. They're coming in because the bank's key doesn't work. And they're told, listen, come in and sign some new documents. We'll get a new slot for you, and then the keys will work. Is that irrelevant? I think largely it is because of the terms of the documents that they signed, yes. That strikes me as the bank playing gotcha. Meaning, if I'm a relatively unsophisticated consumer, and it's very clear that one of the brothers is very unsophisticated, it's not quite clear as to Peter. But I'm not a lawyer. Peter is occupied full-time taking care of his mother. They come in, here, sign this so you can get your new keys. You know, to insist upon a literal reading that says they got documents that Ms. Anderson knew darn well that she wasn't giving them to them. She knew that they were signing a document that they either didn't understand or were disregarding. They were saying they received it when she knew darn well that they had not. It strikes me as the context is actually quite relevant. So, Your Honor, let me just accept that premise for a moment. Even if that context is relevant, we've all still assumed, and you must, that this document does say things are incorporated. And the cases have been uniform on this point. That's lawyer talk. You understand it. I understand it. I do. These are ordinary people. These are not particularly sophisticated people. And for them to hang the entire outcome of this case, for them to have a lawyer's understanding of incorporated, that's pretty tough going. I think we would have a different case, Your Honor, if they had said, you know, I asked for them and they didn't provide them. But we all conduct this kind of business all the time. And banks and retailers conduct this business all the time. And they have to be able to rely on people. Okay. The time is running, so I've got another question. And I'm not sure my decision in this case will depend on it. I did notice that the so-called rules are contained in a 25-page document in tiny, tiny print, tinier than the contract we have here in front of us. I don't know whether it's five-point or whatever point. I just know that it's tiny. And the part of the agreement relevant to them is on pages 20 and 21, even if they had been given it. Oh, my God. Do you expect any reasonable person to turn to page 20 and 21 and find the arbitration agreement at the end of the provision? I expect any reasonable person to do at least this, to read the one-page, very clear English document that was given to them, plain English document, and to ask questions if they're uncertain. There is no evidence. And, in fact, they would deny that they asked questions. There is no evidence. And business has to be able to be done that way, Your Honor. Is this tiny print? I mean, I can read it. It's small. There is no California law that... One of the reasons I say tiny print is not necessarily that it's illegible, but it's going to take you a very long time to get to page 20. Sure, but if you take a look, Your Honor, at the table of contents, it's very, very clear on page 2. Safe deposit box lease agreement has a heading. Safe deposit box lease agreement is the thing that is referred to in the one-page document. Banks have to do a lot of terms for a lot of different kinds of accounts, and that's why banks do it this way. This would be, to me, a totally different case if they were opening a new account. I agree. That was my point. Okay. If that helps you in any way. I see I'm out of time if I may answer that. The answer to that question is, and to help you with the history of this, they had to come in and open a new safe deposit box. They were told, you have to come in and open a new safe deposit box. Where's that in the record that says they had to open a new account? In a way, that's not right. If you may be talking bank talk, they kept the same box. They put it in a different slot. Okay. But they had to open a new safe deposit box account to do that, and they had to sign documents. That's not clear to me. They had an account. They've been doing it for 15 years. And the bank may say, in terms of bank talk, you just opened a new account. But as far as they're concerned, this is just a continuation of the relationship they've had with respect to this box for the last 15 years. They're not opening a new box. They're not opening a new account. They are signing something so the bank can use different keys that now work, because the old bank key didn't work. I understand, Your Honor, but they don't testify that anybody told them that. And this document has to mean something. When you sign a contract with a financial institution, it has to mean something. Counsel, when you say, again, just trying to have clear communication, when you say they don't testify anyone told them that, I thought it was uncontested that the bank contacted them. The bank contacted them and said, please come in, we have to, you know, move your box. Right, but I... Is that wrong? No, no, no, I think that's correct, Your Honor. But what I was saying, no one told them, you're not opening a new account, we just need you to have these new keys. What was told to them is what's in writing, and we can't disregard that. Can I back up? So did the... Can you give me the record site? Where in the record do you point to... Can you point to where in the record... When you're asked to come in? Um, the... That would be helpful to me. So... Peter Fong's declaration at page approximately 155... Uh-huh. ...says, the bank called to tell us that because the guard key for the box's location was damaged, the bank would like to move the box to a different slot. He says, we did not open a new account. What he says about that is wrong. It's just immaterial. Okay. Yeah. Is there anything... I want to make sure you're way over time, but that's our fault. We're asking lots of questions. Are there other indications in the record from the bank's perspective of what they told the Fongs when they asked them to come in to? So the supplemental declaration of Ms. Anderson explains that the plaintiff's then-opened box 2038 is set forth in her declaration, and her declaration, which is at, um... I've got it there. ...year 165 and following. And, I mean, you can't fault Ms. Anderson. She does a lot of transactions every day. She gave us a declaration that followed the basic procedures of what she would have normally... Did they get anything in writing telling them to come in to sign a new contract? I want to give you every opportunity to tell me, what am I missing? I know that Mr. Fong said we got a phone call, but is there anything in writing? There's nothing in this record. I don't believe that they did. All right. Fair enough. Judge Van Dyke, anything further? I'm trying to figure out why it matters whether or not a new account was opened or not. I mean, all the time, we have to click on things to say there's been an updated agreement and they might be adding arbitration terms. So is it your position that they have to have been opening a new account in order to... I mean, you could have somebody come in and say, you've got to sign a new agreement or we're going to close your box. It is not my position. That is the point I was trying to make earlier, poorly. So the... But Your Honor's made it much better than I have. Whether or not this is the opening of a new account, we still have to look at what they signed entitled contract. It is entitled contract. They are bound by the amended rules. And there's no case, no case that says consumers can simply get away with, I'm not bound by anything because I didn't get it. I don't... I'm actually curious to hear the other side's response to that. Yes, I understand, Your Honor. I appreciate your patience with our questions. And I appreciate the questions. Would the court like me to address any of the other issues such as waiver or the... I think we're good. Okay, thank you, Your Honor. Thank you. Counsel, you just have... Can I ask him to respond to that question that I asked right at the end? Sure. So is it your position that it matters if they're opening a new account or not? I mean, do you agree that you could have somebody come in and say, listen, we're wanting to change the terms of our contract. If you want to continue to have a safe deposit box, you have to sign a new agreement. Is that impermissible under California law? It's not impermissible. And this is key is that defense counsel conceded that it was a plausible... that the Fong's construction was plausible, that it's... but that we just didn't put it in the declaration. But remember, when it comes to contract interpretation, we don't care about subjective understanding. We care about the objective understanding. And so your question is, well, what about this context? Does it matter? Absolutely the context matters because that informs the objective understanding. My question is... it doesn't... my question more precisely is, does it matter whether or not they're actually signing a new... like, opening a new safe deposit box or not as to whether... like, are they not allowed to have them sign a contract with new terms if they're not opening a new safe deposit box? I think the point is they would not have been on notice that there are new terms. Other than what it says in the five sentences on this that they signed? There's nothing in here that says these are new terms. It says you're agreeing to the rules, as may be amended from time to time. Is it correct that we don't have the first contract in the record? It is correct. I mean, that's one of the things that could have happened in discovery, if we had discovery. But to answer your questions from the first thing, font size, record size, ER, 27 to 28. It tells me what? That tells you that it's not... it's not 7.5 font, it's below 7.5 font size. Okay. And then also, while we're on the record, ER 155, paragraph 18. This is Peter Fong's declaration. He says, but because we received two new keys, we were asked to sign a document indicating that we had received the new keys for the new location. Um, I also wanted to touch briefly on this easily available point. Um, and this ties in with Defense Counsel's argument that there are a legion of cases such as Wohlschlagler and Marcelinian that all say that we're bound by this contract, but those cases say no such thing. We distinguish them all in the case. As those... those cases are actually really important, because they specifically say... those cases deal with situations in which the incorporated terms were specifically guided to in the document. They said you can... like, for example, in the Wohlschlagler case, they said you can ask for the copy of it in the office. Though that... none of that happened here. There's absolutely no indication, unless you're some lawyer with tons of experience with reading contracts, that this is anything different, um, than, um, than the contract that they actually signed. So my time is running out. Um... You'll find out, actually. It's going back up. The clock is going back up. Oh, great. So go ahead and wrap up, please. Okay, okay. Well, um... I do want to get back to the easily available, because this is a pure... You're gonna have to do it very quickly, because you're out of time. Oh, I thought I was... I thought... I'm sorry. We're out of time. So do it quickly, please. All right, we'll rest on the briefs. Easily available is a fact question. They don't have to ask, because there is no reason for them to ask. That is a jury question as to whether it is easily available. For those reasons, we still have a brief. Thank you both, uh, all, for, uh, your patience with our questions and for your advocacy. We'll take that case under advisement.
judges: FLETCHER, CHRISTEN, VANDYKE